**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-cv-61330-BLOOM
(18-cr-60035-BLOOM)

DALE LUTGEN,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

**ORDER**

      **THIS CAUSE** is before the Court upon Dale Lutgen's ("Movant") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. [1] ("Motion"). On July 18, 2022, the Court entered an Order to Show Cause, ordering Respondent to file a limited response addressing the Motion's timeliness, ECF No. [4]. Respondent filed a Response, ECF No. [5], and Movant filed a Reply, ECF No. [6]. On January 19, 2023, Movant filed a "Motion for Equal Protection," ECF No. [7].

      The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.   BACKGROUND**

      Movant, who is presently incarcerated at Pekin Federal Correctional Institution, asks the Court to vacate, set aside, or correct his sentence in case no. 18-cr-60035. *See generally* ECF No. [1]. The Court construes Movant's Motion liberally due to his *pro se* status. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

On September 13, 2018, Movant was charged by indictment with transportation of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2423(a) (Counts 1 and 2); production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Counts 3 and 4); transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1) (Count 5); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count 6). CR-ECF No. [23].[1]

The background offense conduct is summarized in the Plea Agreement and Factual Proffer Statement. *See* CR-ECF No. [55]. "On or about November 10, 2017, Lighthouse Point Police Department contacted the FBI requesting assistance in locating a 15 years [sic] old minor, E.M., (VICTIM 1) who was reported missing by her mother." CR-ECF No. [55] at 1. "[Movant] arranged to pick VICTIM 1 up from Broward County Florida and transport her back to his residence in Plymouth, WI. . . . to engage in illicit sexual activity." CR-ECF No. [55] at 1. "VICTIM 1 and [Movant] had sexual intercourse in the backseat of [Movant's] vehicle on several occasions." CR-ECF No. [55] at 2. "[Movant] had traveled from Wisconsin with the intent to pick [VICTIM 1] up and take her back to Wisconsin in order for them to live together at his residence and eventually get married." CR-ECF No. [55] at 3. "[F]or several months before [Movant] took VICTIM 1 from Florida, the two had been communicating online. . . . VICTIM 1 stated that she sent [Movant] pornographic photographs at his request." CR-ECF No. [55] at 4. "Numerous photographs of VICTIM 1 [including] pornographic photographs were found on [Movant's] cellular telephone." CR-ECF No. [55] at 4. "During the investigation of the case involving minor VICTIM 1 it was learned that [Movant] had a 16 year old female, E.H., VICTIM 2, living with him in Wisconsin. It was further learned that VICTIM 2 was pregnant with [Movant's] child." CR-ECF No. [55] at 5.

---

[1] References to docket entries in Movant's criminal case, No. 18-cr-60035, are denoted as "CR-ECF No."

"On or about November 26, 2016, [Movant] took pornographic photographs of VICTIM 2 who was at the time 16 years old in the Southern District of Florida." CR-ECF No. [55] at 6. "In approximately December 2016, VICTIM 2 and [Movant] traveled together from South Florida to Sheboygan, Wisconsin by bus. At that time VICTIM 2 was 16 years old and [Movant] was 28 years old. The two had engaged in a sexual relationship in Florida and continued this relationship in Wisconsin. In the Spring of 2018, VICTIM 2 gave birth to [Movant's] child, who was conceived when she was 17 years old." CR-ECF No. [55] at 6.

On November 7, 2018, Movant pled guilty to Counts 3 and 4 pursuant to a written Factual Proffer and Plea Agreement. *See* CR-ECF No. [55]. Movant sought and was granted substitution of counsel for sentencing. *See* CR-ECF No. [77]. On March 6, 2019, Movant filed a motion to withdraw guilty plea, which the Court denied after conducting a hearing on March 18, 2019. *See* CR-ECF Nos. [82, 89, 90].

On April 5, 2019, the Court sentenced Movant to 360 months' imprisonment followed by twenty-five years of supervised release. *See* CR-ECF No. [94].

Movant appealed, asserting that the Court erred in denying his motion to withdraw guilty plea. *See* CR-ECF No. [95]. On February 11, 2020, the Eleventh Circuit issued a judgment affirming Movant's conviction, finding that he received close assistance of counsel during plea negotiations. *See Lutgen v. United States*, 797 F. App'x 509, 511 (11th Cir. 2020). Movant did not file a petition for certiorari review.

Movant filed his Motion on July 7, 2022. *See* ECF No. [1]. He raises 12 grounds for relief. Two grounds are for ineffective assistance of sentencing counsel (grounds 1 and 2); one ground is for ineffective assistance of plea counsel (ground 3); one ground is for "illegal search and seizure" (ground 4); one ground is for abuse of discretion; (ground 5); one ground is ineffective assistance of counsel for "miscalculat[ing] speedy trial computation in case" (ground 6); one ground relates

to violation of Movant's right to a speedy trial (ground 7); four grounds relate to issues with the warrant (grounds 8–11), and one ground of "selective prosecution" in that the "prosecutor chose not to indict women who committed the crimes due to a gender bias" (ground 12). ECF No. [1].

## II. LEGAL STANDARD

***Section 2255 Motions***. "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a) (alteration added). Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under § 2255 are extremely limited. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011) (citation omitted). "[R]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

## III. DISCUSSION

***Statute of Limitations***.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Movant's Motion because it was filed after the AEDPA's effective date of April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA establishes a one-year period of limitations to file a motion under 28 U.S.C. § 2255, running from the latest of:

1. the date on which the judgment of conviction becomes final;

2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). As a starting point for determining the applicable statute of limitations, the Court considers the date on which Movant's conviction became final under § 2255(f)(1).[2]

The Eleventh Circuit affirmed Movant's conviction on February 11, 2020. *See Lutgen*, 797 F. App'x at 511. Movant did not file a petition for certiorari review. His conviction, therefore, became final when the deadline for filing a petition for certiorari expired. *See Clay v. United States*, 537 U.S. 522 (2003). This is typically 90 days. *Id.* at 525; S. Ct. R. 13(1). However, a Supreme Court order was in effect at the time that Movant's petition would have been due that provided: "the deadline to file any petition for a writ of certiorari due on or after the date of this order is extended to 150 days from the date of the lower court judgment . . . ." Miscellaneous Order Addressing the Extension of Filing Deadlines (COVID-19), 334 F.R.D. 801 (2020). Accordingly, Movant's conviction became final on July 10, 2020, which is 150 days from February 11, 2020. Under (f)(1), then, Movant had until July 10, 2021, to timely file. *See* 28 U.S.C. § 2255(f)(1).

Movant filed[3] his Motion on July 7, 2022, nearly a year too late. *See* ECF No. [1] at 12. Unless all of this time deserves to be equitably tolled, the Motion is due to be denied as time barred.

---

[2] Movant does not claim that the Motion is timely under 28 U.S.C. § 2255 (f)(2), (f)(3), or (f)(4).
[3] The Motion was docketed on July 15, 2022, but Movant delivered the Motion to prison authorities on July 7, 2022. *See* ECF No. [1] at 12. Under the prison mailbox rule, "a *pro se* prisoner's court filing is

*See Jones v. United* States, 304 F.3d 1035, 1038 (11th Cir. 2002). Movant presents four reasons why he believes the Court should find his Motion timely. *See* ECF Nos. [1, 6].

### *Equitable Tolling*.

Equitable tolling "'can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition.'" *Dodd v. United States*, 365 F.3d 1273, 1282 (11th Cir. 2004) (quoting *Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1312 (11th Cir. 2001)). The movant must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). The prisoner has the "difficult burden of showing *specific facts* to support his claim of extraordinary circumstances and due diligence." *Mazola v. United States*, 294 F. App'x 480, 482 (11th Cir. 2008) (emphasis added) (citing *Akins v. United States*, 204 F.3d 1086, 1089-90 (11th Cir. 2000)). "Due diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts." *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002). "Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system." *Id*. (quotation omitted).

Movant asserts that his untimeliness should be excused because (1) he was not notified when his appeal was denied; (2) COVID-19 shut down prison operations; (3) he had a medical issue; (4) prison staff denied him access to legal materials and he was in the Special Housing Unit ("SHU"). *See* ECF Nos. [1], [6]. None of these claims, either individually or when viewed in concert, justifies equitable tolling in this case.

---

deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

**A. Lack of Knowledge of Limitations Period**

In ground 1, Movant states he "does not know the date [his] appeal became final [because] counsel never informed [him]." ECF No. [1] at 10. He also claims he was "unaware of the one-year time limit [to file a § 2255] as he was not informed by the court nor counsel." ECF No. [1] at 10. However, the Court finds that these are not "extraordinary circumstances," and that Movant does not show "that he has been pursuing his rights diligently." *Holland*, 560 U.S. at 649 (2010).

There is no requirement that a *pro se* litigant be given actual notice of a statute of limitations. *See Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007) (noting "the law does not require a court, *sua sponte*, to remind a *pro se* litigant that he only has one year to file his claim."). "[P]*ro se* litigants, like all others, are deemed to know of the one-year statute of limitations." *Id.*; *see also Piler v. Ford*, 542 U.S. 225, 231–32 (2004)) ("[D]istrict courts are not required to warn *pro se* habeas petitioners that their federal claims could be time-barred absent equitable tolling if a petitioner opts to dismiss a mixed petition [containing both unexhausted and exhausted claims] without prejudice . . . ."). Movant's argument that he is entitled to equitable tolling for lack of knowledge of the statute of limitations is without legal basis. *See generally Rivers v. United States*, 416 F.3d 1319, 1323 (11th Cir. 2005) ("[P]rocedural ignorance [does not serve] as an excuse for prolonged inattention." (quotation omitted)).

Movant's argument that he did not "know the date on [which] his direct appeal became final" is similarly unavailing. ECF No. [1] at 10. Movant does not show he diligently attempted to pursue his rights. Reasonable diligence is determined in reference to the movant's actions, not those of his attorney. *George v. Sec'y Dept. of Corr.*, 438 F. App'x 751, 753 (11th Cir. 2011) ("[A]ttorney negligence is not a basis for equitable tolling, especially when the petitioner cannot establish his own diligence in ascertaining the federal habeas filing deadline.") Movant does not

state he made any attempt to ascertain the result of his appeal—for example, by contacting his attorney or the Clerk of Court for the Eleventh Circuit. Movant took no actions to pursue his rights.

In a similar context, the Eleventh Circuit held that a prisoner's second habeas petition was not entitled to equitable tolling because the prisoner did not act diligently. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1288 (11th Cir. 2002). There, the prisoner claimed he did not receive a copy of the court's order dismissing his first habeas petition until "almost a year after it was issued" despite "sen[ding] various letters to the Clerk of the Court . . . inquiring about the status of his petition." *Id.* at 1281. The court found movant did not act diligently because he provided "no detailed explication of his attempts to obtain information from the district court and listed no information about specific letters that he sent." *Drew*, 297 F.3d at 1288. The court concluded that "movant's own lack of diligence precludes us from equitably tolling the statute of limitations. In particular, the record reflects that, for a period of some sixteen months, [movant] made virtually no effort to ascertain the status of his first habeas petition in the district court." *Id.* at 1287.

Here, Movant does not claim that he took any action to determine the outcome of his appeal. Movant does not even claim that he wrote to the Clerk to determine the status of his appeal. Accordingly, Movant does not show that he pursued his rights diligently in relation to determining the outcome of his direct appeal and the statute of limitations. *Holland*, 560 U.S. at 650. There is no basis to find equitable tolling on the basis of Movant's alleged lack of knowledge.

**B. COVID-19-Related Lockdowns**

Movant argues next that "COVID-19 also delayed filing, and many courts have granted extensions due to the COVID-19 disruptions and the nation-wide B.O.P. lockdowns." ECF No. [1] at 10. However, this circuit's precedent is that "lockdowns and similar limitations imposed because of the COVID-19 pandemic were not extraordinary circumstances which by themselves justify equitable tolling." *Powell v. United States*, No. 21-12432-J, 2022 WL 2811987, at *1 (11th Cir.

2022) (citing *Dodd v. United States,* 365 F.3d 1273 (11th Cir. 2004) (holding that equitable tolling does not apply for periods of "various lockdowns or during a period in which the movant's legal papers were misplaced by the prison[.]").

Movant does not specifically state how COVID-19 related disruptions affected his ability to timely file his Motion. Movant cites a case from the Northern District of Illinois where the court equitably tolled a § 2255 movant's statute of limitations because "[t]he COVID-19 restrictions in the prison adversely affected the mail system, which was beyond [movant's] control, and he was reasonably diligent in submitting his motion via the mail despite the obstacles he faced." *United States v. Washington*, No. 20 C 50300, 2021 WL 2222609, at *3 (N.D. Ill. 2021). There, the movant stated he put his motion in the prison mailbox on June 20, the statute of limitations expired June 21, and the motion was received by the Clerk post-marked August 7. *Id.* at *2. Movant was required to put his motion in the prison mailbox, rather than the box for legal mail, "because the typical procedure for legal mail was unavailable or otherwise disrupted because of COVID-19 restrictions." *Id.* The court held that equitable tolling was appropriate because the movant delivered his motion to prison authorities one day before the statute of limitations expired, even though it was not post-marked until months later. *Id. See also Williams*, 557 F.3d at 1290. *Washington* is inapplicable to Movant's situation because Movant was 369 days[4] late in getting his Motion to prison authorities for mailing and he has not shown that a specific prison procedure was created because of COVID-19 that prevented him from timely filing. The movant in *Washington* specifically identified the new legal mail procedure as the reason for his delay, but the same is not true of Movant.

---

[4] There are 369 days between July 10, 2021, and July 14, 2022.

9

Accordingly, Movant has not shown that Covid-19 lockdowns constituted "extraordinary circumstances" and that Movant "has been pursuing his rights diligently." *Holland*, 560 U.S. at 649. There is no basis for equitable tolling because of COVID-19.

C. **Medical Issue**

Movant's third argument in support of equitable tolling is that he suffered a medical injury before sentencing, "tearing ligaments and tendons [and] was denied medical treatment by medical staff . . . ." ECF No. [1] at 10. The Court recognizes that a serious medical condition can justify a period of equitable tolling. *See, e.g., Mazola*, 294 F. App'x at 482 (applying "42 days of equitable tolling" to account for the 42 days the petitioner "was hospitalized for pneumonia and tuberculosis."). However, Movant's fails to meet his burden because "his supporting allegations [are not] specific and [are] conclusory." *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014).

The entirety of Movant's argument is that he is entitled to equitable tolling because, before sentencing, he tore "ligaments and tendons." ECF No. [1] at 10. Movant falls far short of alleging "specific facts" supporting his claim. *Mazola*, 294 F. App'x at 482. Movant fails to inform the Court where his injuries are located, how long they lasted, and how they impacted his ability to timely file his § 2255 motion. *See Lang v. Alabama*, 179 F. App'x 650, 652 (11th Cir. 2006) (noting that petitioner with "do-not-sit" medical order failed to explain why he "could not sometimes sit in the law library for less than 30 minutes to prepare" his petition.); *Mingst v. Dixon*, No. 22-81739-CIV, 2022 WL 16857028, at *5 (S.D. Fla. Nov. 10, 2022) (finding no diligence where petitioner failed to "say when the stroke happened, how long he was hospitalized, or what he did to 'pursue his rights diligently' before, during, or after his stroke.") (quotation omitted).

Movant missed his window to timely file by 369 days. Even if he provided details to show equitable tolling is warranted for some of those days, Movant's claimed injuries would not excuse

such a long delay. In *Lang*, the Eleventh Circuit granted tolling "during the ten weeks of [petitioner's] chemotherapy and during his six-day hospitalization for heart surgery" but still found petitioner's § 2254 untimely because it was filed 344 days late. *Id.* at 652.

Consequently, Movant has not met his burden to show that his medical issues constituted "extraordinary circumstances" and that he "has been pursuing his rights diligently." *Holland*, 560 U.S. at 649. Movant is not entitled to any equitable tolling on this basis.

### D. Lack of Access to Legal Documents

Movant's fourth argument is that he is entitled to "equitable tolling due to Government interference." ECF No. [6] at 1. Movant states that he was separated from his legal papers when he was transferred between different BOP facilities. *See* ECF No. [6] at 2. "When we were able to finally go to the law library, I brought my discovery and it was [immediately] seized by staff . . . To this day I have been denied access to these items." ECF No. [6] at 2. Movant also claims Movant's "legal materials" were thrown away when he was moved into the SHU. ECF No. [6] at 2–3. Movant states that when he was released from the SHU, there were "less than 3 months before the deadline." ECF No. [6] at 3.

Periods where a prisoner is without legal papers are not automatically subject to equitable tolling. *Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000) (holding that equitable tolling was inapplicable during periods of solitary confinement, lockdown, and when the movant's legal papers were misplaced by the prison), *aff'd*, 545 U.S. 353 (2005). A prisoner must show how the lack of access to legal materials kept the petitioner from timely filing. *Paulcin v. McDonough*, 259 F. App'x 211, 212 (11th Cir. 2007) (holding that denial of tolling was not abuse of discretion where movant lacked access to law library and legal materials for ten months of one-year limitations period). Movant does not explain how his lack of access to his legal materials kept him from timely filing. Indeed, the Motion does not provide any citations to documents or transcripts

in the criminal case, leading the Court to conclude that access to legal materials was not strictly required for Movant to file his § 2255 on time. Additionally, equitable tolling is not applicable given the eight months to file a motion after Movant's conviction was affirmed on appeal, before being sent to the SHU in April 2021 and considering the additional three months after being released from the SHU before the statute of limitations expired. ECF No. [6] at 3.

For those reasons, Movant has not met his "difficult burden of showing specific facts" to support his claim of extraordinary circumstances and due diligence. *Mazola*, 294 F. App'x at 482. Therefore, equitable tolling is not available to Movant. Because the Motion is untimely, the Motion is denied.

## IV. EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on the movant to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record before the Court. Indeed, because the Court can "adequately assess [Movant's] claim[s] without further factual development[,]" Movant is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, they must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if Movant makes

"a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where the district court rejects a movant's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court rejects a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Movant fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Upon consideration of the record, the Court concludes that no certificate of appealability shall issue.

## VI. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Movant Dale Lutgen's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, **ECF No. [1]**, is **DENIED AS UNTIMELY**.

2. No certificate of appealability shall issue.

3. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

Case No. 22-cv-61330-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 13, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Dale Lutgen
#18721-104
Pekin Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 5000
Pekin, IL 61555
PRO SE